# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GREG COLEMAN, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**TRANS BAY CABLE, LLC, ET AL.,**<br><br>Defendants. | CASE NO. 19-cv-02825-YGR<br><br>**ORDER GRANTING MOTION TO REMAND**<br>Re: Dkt. No. 18 |

Plaintiffs Greg Coleman and Richard Bou bring this action against defendants Trans Bay Cable LLC ("TBC") and Steven Powell, alleging wrongful discharge, wrongful termination, violation of California's Unfair Competition Law, and intentional infliction of emotional distress. (Dkt. No. 1, Ex. A ("Compl.").) Plaintiffs originally filed their complaint in California Superior Court, County of Contra Costa, on February 14, 2019. (*Id*.) Defendants later removed the action to this Court, asserting federal jurisdiction on the ground that the material transactions set forth in the complaint occurred within the boundaries of the Presidio, a federal enclave. (Dkt. No. 1 ("Removal"), ¶ 9.)

Now pending before the Court is plaintiffs' motion to remand. (Dkt. No. 18 ("Motion").) Having carefully considered the pleadings in this action and the papers and evidence submitted, and for the reasons set forth below, the Court **GRANTS** the motion to remand.[1]

**I.   BACKGROUND**

The complaint alleges as follows:

TBC is an energy transmission company and public utility that provides electrical power and other services to San Francisco and surrounding areas via a 53-mile-long direct current electrical transmission line with bundled fiber-optic cables located beneath the San Francisco Bay.

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the motion appropriate for decision without oral argument.

(Compl. ¶¶ 10, 15.) As a utility company, TBC is subject to the jurisdiction of both the California Public Utilities Commission and the Federal Energy Regulatory Commission, which require TBC to comply with rules and regulations designed to ensure that electricity remains available, affordable, and protected from massive disruptions. (*Id.* ¶¶ 11–14.)

Plaintiff Greg Coleman began working at TBC as an onsite consulting technician in August 2014, and in September 2015, was hired directly by TBC as an IT manager reporting to Chief Operating Officer Sean O'Reilly. (*Id.* ¶ 16.) During his employment with TBC, Coleman primarily worked out of TBC's Contra Costa County office in Pittsburg, California. (*Id.* ¶ 17.)

In June 2017, Coleman informed Ismail Al-Jihad, TBC's Director of Engineering, and Chris Chadd, another TBC employee, of TBC's non-compliance with various regulations. (*Id.* ¶ 20.) It was agreed the issues should be reported to defendant Steven Powell, TBC's Senior Critical Infrastructure Protection ("CIP") Manager, who supervised Coleman. (*Id.*) Powell also primarily worked out of the Pittsburg office. (*Id.* ¶ 21.)

Later that month, Coleman informed Powell of the compliance issues. (*Id.* ¶ 22.) Powell impliedly threatened Coleman not to report the matter to anyone else. (*Id.*) A few days later, Coleman presented a report on TBC's compliance issues to Powell, further angering him. (*Id.*) On July 10, 2017, Coleman followed up with Powell regarding the compliance issues. (*Id.* ¶ 23.) Powell ignored the issues. (*Id.*)

On or about July 14, 2017, Coleman attended a meeting at which he notified O'Reilly and TBC's general counsel about Powell's retaliation and refusal to address the compliance issues. (*Id.* ¶ 25.) Thereafter, in about August 2017, Coleman decided not to apply for a position for which he felt he had the qualifications, experience, and organizational knowledge because he would have had to report to Powell. (*Id.* ¶ 27.) Instead, he requested to have input during the interview and hiring process. (*Id.*) His request was ignored. (*Id.*)

Further, in about early September 2017, Powell denied Coleman electronic CIP access in retaliation for Coleman reporting the compliance issues. (*Id.* ¶ 28.)

Plaintiff Richard Bou was hired by TBC as an operations engineer in March 2017. (*Id.* ¶ 31.) Like Coleman, Bou primarily worked out of TBC's Pittsburg office. (*Id.* ¶ 32.) In about July 2017, Bou notified Al-Jihad of issues related to TBC's compliance with certain regulations.

2

(*Id.* ¶ 33.) Later, in August 2017, Bou met with Al-Jihad and Powell to present an audit report with his findings. (*Id.* ¶ 34.) Powell refused to sign the audit findings. (*Id.*) Powell's attitude toward Bou subsequently changed. (*Id.* ¶ 35.) Bou reported Powell's retaliation to interim Human Resources Director Nina Sights in late September 2017. (*Id.* ¶ 36.)

In early March 2018, Coleman and Bou attended separate meetings with O'Reilly, Sights, and TBC's Chief Operating Officer, at which Coleman and Bou were confronted with false accusations that Coleman had discussed confidential matters outside the workplace and verbally threated Powell. (*Id.* ¶ 41.)

On March 8, 2018, Coleman and Bou were terminated during separate meetings held at TBC's Pittsburg office. (*Id.* ¶ 42.)

## II. LEGAL STANDARD

Under 28 U.S.C. section 1441(a), "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction, may be removed by [a] defendant . . . to [a federal] district court[.]" *See Rodriguez v. AT & T Mobility Servs. LLC,* 728 F.3d 975, 977 (9th Cir. 2013) ("A defendant may remove to federal district court an action first brought in state court when the district court would have original jurisdiction[.]"). As is relevant here, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, which includes tort claims that arise on "federal enclaves," *Durham v. Lockheed Martin Corp*, 445 F.3d 1247, 1250 (9th Cir. 2006). *See also Rosseter v. Indus. Light & Magic*, No. C 08-4545 WHA, 2009 WL 210452, at *1 (N.D. Cal. Jan. 27, 2009) ("[C]laims due to acts that took place on a federal enclave are under exclusive federal law jurisdiction.").[2]

The removal statutes are generally strictly construed, so as to limit removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–109 (1941). Accordingly, there is a

---

[2] Article I, Section 8, Clause 17 of the United States Constitution, known as the "federal enclave clause," gives Congress the power to "exercise exclusive legislation in all cases whatsoever" over any place the federal government purchases with the consent of a state "for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings." "Exclusive legislation" is consistent with "exclusive jurisdiction." *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652 (1930).

3

"strong presumption against removal jurisdiction" when evaluating a motion to remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation marks omitted). "The burden of establishing federal jurisdiction is upon the party seeking removal[.]" *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988). Doubts as to removability are generally resolved in favor of remanding the case to state court. *See Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

### III. DISCUSSION

#### A. Motion to Remand

Defendants removed this action on the ground that the material transactions set forth in the complaint occurred in the Presidio, a federal enclave. (Removal, ¶ 9.) Plaintiffs contend removal is improper for two reasons: (1) federal enclave jurisdiction does not apply because the relevant events occurred outside the Presidio, and (2) removal is barred by the doctrine of judicial estoppel. The Court addresses each argument in turn.

"Federal enclave doctrine permits federal courts to exercise jurisdiction over . . . claims that arise in federal enclaves." *Kerr v. Delaware N. Companies, Inc.*, No. 116CV01797LJOSAB, 2017 WL 880409, at *3 (E.D. Cal. Mar. 6, 2017) (citing *Durham*, 445 F.3d at 1250; *Willis v. Craig*, 555 F.2d 724, 726 (9th Cir. 1977); *Swords to Plowshares v. Kemp*, 423 F. Supp. 2d 1031, 1038 (N.D. Cal. 2012)); *see also In re High-Tech Employee Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125–26 (N.D. Cal. 2012) ("That Lucasfilm is now located on the Presidio . . . does not automatically bar *all* state law claims brought against it. . . . [T]he Court looks to whether the locus in which Plaintiffs' Cartwright Act claim arose is the Presidio."); *Totah v. Bies,* No. 10–CV–05956–CW, 2011 WL 1324471, at *2 (N.D. Cal. Apr. 6, 2011) (holding that federal enclave doctrine applies to tort actions where the "substance and consummation" of events giving rise to claims occur "on a federal enclave"). Here, the Court takes judicial notice of the fact that the Presidio is a federal enclave. (Dkt. No. 29-1.)[3]

Thus, defendants bear the burden of establishing that the material events alleged in the complaint and giving rise to plaintiffs' claims occurred in the Presidio. For this proposition,

---

[3] The parties do not dispute this judicially-noticed fact.

4

defendants argue that federal enclave jurisdiction lies because Coleman was headquartered in the Presidio, primarily worked in the Presidio, and engaged in the conduct giving rise to his claims in the Presidio. (Dkt. No. 29 ("Opp.") at 1.)[4] Defendants further argue that TBC employs the decision-makers relevant to the complaint in the Presidio and participated in the material events giving rise to plaintiffs' claims in the Presidio. (*Id*.) By contrast, plaintiffs argue that their "purely state law claims aris[e] almost exclusively out of conduct that occurred on private property outside the Presidio," namely, at TBC's Pittsburg office. (Motion at 8.)

Defendants fail to carry their burden of establishing federal enclave jurisdiction for three reasons.

*First*, the fact that TBC is headquartered in the Presidio and certain company executives are based in the Presidio office is insufficient to confer federal enclave jurisdiction over this action. Defendants attempt to connect these facts to plaintiffs' claims, arguing that "the ultimate decision to terminate [p]laintiffs' employment w[as] made by Chief Operating Officer Sean O'Reilly and Former Chief Executive Officer Michael Cyrus, entirely in the Presidio." (Opp. at 7; *see also* Dkt. No. 29-2 ("Sights Decl."), ¶ 12.) As courts in this circuit have recognized, however, "the plaintiff's place of employment"—rather than where employment decisions were made—"[i]s the significant factor in determining whether the plaintiff's employment claims arose under the federal enclave doctrine."[5] *Abikar v. Bristol Bay Native Corp.*, 300 F. Supp. 3d 1092, 1102 (S.D. Cal. 2018) (quoting *Lockhart v. MVM, Inc.*, 175 Cal.App.4th 1452 (2009)). The Court adopts this approach. An employer cannot manufacture federal jurisdiction simply by calling on executives to make decisions on a federal enclave, even if the facts giving rise to the claim occurred outside of the enclave. Here, that two C-suite executives, one of whom is not even mentioned in the complaint, made a decision to terminate plaintiffs while at TBC's Presidio office does not suffice

---

[4] Defendants' removal notice and opposition brief focus almost exclusively on the allegations pertaining to Coleman. With respect to Bou, defendants only assert that "even if he did work primarily off the enclave, the Court may exercise supplemental jurisdiction over those claims." (Opp. at 1–2.) Accordingly, the Court first considers whether original federal jurisdiction exists based on the Coleman-related allegations, and if so, will proceed to consider whether the Bou-related allegations support supplemental jurisdiction.

[5] Defendants concede as much. (*See* Opp. at 11 ("[T]he inquiry is on a [p]laintiff's 'place of employment' during the material times giving rise to the action.").)

5

to establish federal enclave jurisdiction. Further, that plaintiffs advance a theory of liability in part based on TBC's tacit ratification of Powell's conduct, the gravamen of the complaint is that *Powell*, who both parties agree primarily worked outside of the federal enclave, retaliated against plaintiffs, causing them to experience emotional distress. Any connection between O'Reilly's conduct at TBC headquarters and Powell's behavior towards plaintiffs is insufficient to confer federal jurisdiction.

*Second*, the evidence provided by defendants to establish that Coleman primarily worked in the Presidio during the course of his employment suffers from internal deficiencies and is demonstrably not the best evidence of Coleman's actual employment location during the events at issue. As Coleman notes, gate logs would have most accurately shown his actual location. (*See* Dkt. No. 32, ¶¶ 5–6.) That defendants chose not to submit these logs strongly suggests they did not support defendants' position. Further, as demonstrated, the Replicon data logs that purport to show that Coleman logged 4,446.75 of 4,964.25 hours at TBC's Presidio office (Sights Decl. ¶ 8) are inconsistent with the expense reimbursement records submitted by defendants. For example, while the data logs show Coleman was in the Presidio for all 21 working days in December 2017 (Sights Decl., Ex. 1 at ECF 17–28), Coleman was reimbursed for travel to the Pittsburg office on 16 days that month (*id.*, Ex. 2).[6]

*Third*, and most importantly, plaintiffs' complaint focuses on specific events that allegedly occurred between June 2017 and March 2018, and the jurisdictional inquiry therefore must focus on this same period of time. As such, even assuming Coleman exclusively worked at TBC's Presidio office for the first year and a half of his employment,[7] that fact would not be

---

[6] Coleman's declaration also conflicts with the evidence offered by defendants. For example, TBC's Replicon logs show that on July 27, 2017, Coleman worked eight hours in the Presidio *and* eight hours in Pittsburg. (Sights Decl., Ex. 1 at ECF 15.) Coleman asserts that he "never worked a full 8 hour day at both sites on the same day." (Dkt. No. 32, ¶ 7.) Further, Coleman submits that "on a number of occasions," he "logged into what would appear as the 'Presidio' location" on TBC's logs "while [he] was not physically at the Presidio location." (Coleman Decl. ¶ 6.) Defendants do not, nor can they, credibly refute this assertion, because in this system of self-reporting, only Coleman actually knew where he was at all relevant times.

[7] Plaintiffs suggest this may have been the case. In his declaration, Coleman states that when he was first hired by TBC in 2015, he primarily worked out of the Presidio, but beginning in mid-2017, he primarily worked outside the Presidio. (Coleman Decl. ¶ 20.)

6

determinative to the jurisdictional issue before the Court. *See Abikar*, 300 F. Supp. 3d at 1102–03 (finding that although plaintiffs performed most of their work on U.S. military bases, the federal enclave doctrine did not bar their Fair Employment and Housing Act claims to the extent they were premised on work performed outside the federal enclave).

Instead, the Court must consider where the material events giving rise to plaintiffs' claims *as pleaded* occurred.[8] The key allegations underlying plaintiffs' claims begin in June 2017, when Coleman allegedly began reporting issues regarding TBC's regulatory non-compliance to others in the company. Specifically, the complaint alleges that in June 2017, Coleman informed al-Jihad and Chadd that TBC was not in compliance with CIP regulations, and the three agreed to report these issues to Powell. (Compl. ¶ 20.) The complaint further alleges that in late June, and then again on July 10, Coleman reported these issues to Powell. (*Id*. ¶¶ 22–23.) "On or about July 14, 2017," Coleman informed O'Reilly of the issues. (*Id*. ¶ 25.)

Notably, even the Replicon logs indicate that Coleman exclusively worked in the Presidio from October 2015 through May 2017, after which he began working outside of the federal enclave on a regular basis. The Replicon logs further show that Coleman was in Pittsburg on June 5 and 12, around the time he first raised TBC's regulatory non-compliance with al-Jihad and Chadd, as well as on July 17 and 20, around the time Coleman notified O'Reilly of the compliance issues. (Sights Decl., Ex. 1 at ECF 15.) Although the complaint does not allege the precise dates on which these events took place, the Court does not require that level of specificity at this juncture, especially given that not even defendants contend that the material interactions between the principal parties occurred anywhere other than outside the enclave.[9] Moreover, it is

---

[8] Coleman estimates that from mid-2017 through the end of his employment on March 8, 2018, he spent approximately 75 to 80 percent of his time working out of the Pittsburg office. (Coleman Decl. ¶ 5.)

[9] Coleman alleges that he was first made aware of TBC's regulatory non-compliance through his work in Pittsburg, and that the "environments" involved in TBC's compliance issues could be reached only from Pittsburg. (Coleman Decl. ¶¶ 11–14.) In addition, the Replicon logs show Coleman worked outside of the Presidio on 11 out of 25 days in August 2017 and 12 out of 23 days in September 2017, during which time he allegedly began experiencing retaliation from Powell and others at TBC. (Sights Decl., Ex. 1 at ECF 15–16.) The logs further show Coleman consistently worked out of Pittsburg for approximately six weeks prior to his termination. (*Id*.) This evidence lends further support to a finding that the plaintiffs' claims arise out of activities

7

undisputed that Coleman and Bou were terminated at the Pittsburg office. (Coleman ¶ 15; Dkt. No. 21 ¶ 6.)

At best, the evidence indicates Coleman was splitting his time almost equally between the Presidio and non-Presidio offices when key instances of retaliation are alleged to have taken place.[10] However, the evidence provided also demonstrates that Coleman was working *exclusively* in Pittsburg when the material events underlying his claims of wrongful discharge and wrongful termination actually occurred.[11] Accordingly, defendants have not carried their burden such that federal enclave jurisdiction applies. In light of this conclusion, the Court declines to consider whether removal is barred by judicial estoppel.

**B.     Request for Fees and Costs**

Plaintiffs seek fees and costs incurred in bringing their remand motion pursuant to 28 U.S.C. section 1447(c), arguing that defendants should be "punished" for submitting erroneous inconsistent records in support of removal. (Motion at 15; Reply at 7–8.)

Under section 1447(c), "[a]n order remanding the case may require payment of just costs

---

based outside of a federal enclave.

[10] In her declaration, Sights states that Coleman was "headquartered within the Presidio" and that, based on her own personal interactions with him, Coleman worked in the Presidio for about 90 percent of his work time. (Sights Decl. ¶ 5.) That Coleman may have been "headquartered" in the Presidio does not establish that the events at issue occurred in the Presidio. Sights is in the Human Resources department (*id*. ¶ 1) and does not work with Coleman. She provides no factual basis to demonstrate the nature of her "personal interactions" with Coleman. Her estimate that Coleman spent 90 percent of his time at the Presidio office is based on the Replicon data. Accordingly, for the reasons previously noted, this estimate does not carry persuasive weight.

[11] The cases cited by defendants for the proposition that federal enclave jurisdiction exists even if an employee is informed of his termination outside the federal enclave are distinguishable. In *Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 481 (2000), the court found "[t]he fortuity of a paid suspension before his termination does not mean that [plaintiff] ever worked for Lockheed outside the enclave or that his employment claims arose elsewhere." Similarly, in *Lockhart v. MVM, Inc.*, 175 Cal. App. 4th 1452, 1459 (2009), the court held that the federal enclave doctrine applied even though the employee was at home when she received her termination letter, because she "was the employee of a federal contractor operating on a federal enclave." Here, in contrast, Coleman was not informed of his termination outside the enclave by chance, but rather, because he was terminated while at work in TBC's Pittsburg office, where TBC's logs show he had been working for the previous six weeks. (Sights Decl., Ex. 1 at ECF 18–19.)

8

and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorneys' fees under [section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Ninth Circuit has held that "removal is not objectively unreasonable solely because the removing party's arguments lack merit[.]" *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Rather, in determining whether to award attorneys' fees and costs, a court must consider "whether the relevant case law clearly foreclosed the defendant's basis of removal." *Id.* at 1066.

Here, although ultimately not persuasive, the Court does not find defendants' federal enclave theory objectively unreasonable based on the prevailing case law and the complaint as currently pleaded. *See id.* at 1065–66 (district court did not abuse its discretion by denying attorney fee request where defendant's arguments in favor of removal were "novel" but not objectively unreasonable).

Accordingly, plaintiff's request for attorneys' fees is denied.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiff's motion to remand and **DENIES** plaintiff's request for attorneys' fees. The Clerk of the Court is directed to remand this action to California Superior Court, County of Alameda.[12]

This Order terminates Docket Number 18.

**IT IS SO ORDERED.**

Dated: August 14, 2019

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

---

[12] TBC's motion to dismiss and compel arbitration is **DENIED** as moot.

9